UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| LAWRENCE LEROY RIDDLE, | ) | |
| | ) | |
| Plaintiff, | ) | 13-41-GFVT |
| | ) | |
| V. | ) | **MEMORANDUM OPINION** |
| | ) | **&** |
| CAROLYN W. COLVIN, Acting | ) | **ORDER** |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

*** *** *** ***

The plaintiff, Leroy Riddle, seeks judicial review pursuant to 42 U.S.C. §§ 405(g), of an administrative decision of the Commissioner of Social Security ("Commissioner") denying his application for Disability Insurance Benefits ("DIB"). For the reasons stated herein, the Court will deny Riddle's Motion for Summary Judgment [R. 12], and grant that of the Commissioner [R. 13].

**I**

Riddle filed his application for DIB in July, 2010. [Tr. 161-164.] He alleges a disability beginning on February 15 of that year, due to a variety of problems, including herniated discs, high blood pressure and issues with his cholesterol. [Tr. 179-188.] His application was denied initially [Tr. 93-96] and upon reconsideration [Tr. 98-100]. A hearing was conducted before Administrative Law Judge ("ALJ") Karen Jackson on September 15, 2011, where the ALJ heard testimony from Riddle, who was forty-five years old as of the alleged onset date. [Tr. 24-68.] Riddle has a high-school education and has past relevant work as a presser at a sewing factory,

utility worker, injection-molding worker, furniture deliverer, and electric coil builder. [Tr. 17; 29-58; 59-62; 190.] Although the vocational expert testified that Riddle could no longer perform his past relevant work, she found that Riddle could perform other jobs that exist in significant numbers in the national economy, and the ALJ accepted that testimony. [Tr. 59-62, 18.] On October 28, 2011, ALJ Jackson issued a decision denying DIB to Riddle. [Tr. 12-19.]

In evaluating a claim of disability, an ALJ conducts a five-step analysis. *See* 20 C.F.R. § 404.1520.[1] First, if a claimant is performing a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, he is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all the relevant evidence in the record to determine the claimant's residual functional capacity (RFC), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairments experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545. Fourth, the ALJ must determine whether the clamant has the RFC to perform the

---

[1] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry, which is the focus of this case, the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

requirements of his past relevant work, and if a claimant's impairments do not prevent him from

doing past relevant work, he is not "disabled."   20 C.F.R. § 404.1520(e).  The plaintiff has the

ultimate burden of proving compliance with the first four steps.  *Kyle v. Comm'r Of Soc. Sec.*,

609 F.3d 847, 855 (6th Cir. 2010).   Fifth, if a claimant's impairments (considering his RFC, age,

education, and past work) prevent him from doing other work that exists in the national

economy, then he is "disabled."  20 C.F.R. § 404.1520(f).

In this case, ALJ Jackson determined, at Step 1, that Riddle had not engaged in

substantial gainful activity since that alleged onset date.  [Tr. 14.]  At Step 2, the ALJ found that

Riddle had the following severe impairments:  "Neck pain secondary to mild disc bulging, C3-4

and C4-5 and low back pain secondary to herniated nucleus pulposus, L5-S1 and disc protrusion,

L4-5."  [*Id.*]  At Step 3, the ALJ concluded that Riddle did not have an "impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR  404.1520(d), 404.1525 and

404.1526)," so the analysis continued to the next step.  [Tr. 15.]  At Step 4, the ALJ concluded

that Riddle had a residual functional capacity (RFC) to "perform less than the Full Range of

sedentary work as defined in 20 CFR 404.1567(a)."  [*Id.*]  Jackson noted the following

limitations:

> He can life/carry ten pounds occasionally, less than ten pounds frequently; stand and/or
> walk a total of two hours in an eight hour workday; sit about six hours in an eight hour
> workday; no more than occasionally pushing/pulling with the upper and lower
> extremities; never climbing ladders, ropes and scaffolds' occasionally climbing ramps or
> stairs; frequently balancing; occasionally stopping, kneeling, crouching or crawling; must
> avoid exposure to full-body vibration and hazards such as dangerous machinery or
> unprotected heights.

[*Id.*]  With these limitations in mind, the ALJ determined that Riddle was not capable of

performing any of his past, relevant work.  [Tr. 17.]  Finally, at Step 5, the ALJ adopted the

opinion of the vocational expert, concluding that because there were significant numbers of jobs in the national economy that Riddle could perform, Riddle was not disabled.  [Tr. 18.]  The Appeals Council found no reason for review on December 22, 2012 [Tr. 1-6] and Riddle now seeks judicial review in this Court.

## II

This Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision.  42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987).  "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).  The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decisionmakers can go either way, without interference by the courts."  *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

In determining the existence of substantial evidence, courts must examine the record as a whole.  *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)).  However, a reviewing court may not conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012) (citation omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also

4

supports the opposite conclusion. *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

Riddle raises two issues on appeal to this Court, although he provides little to no argument to support either.[2] First, he suggests that the ALJ's decision was not supported by substantial evidence. [R. 12-1 at 2-4.] Second, Riddle submits that the ALJ failed to give proper weight to the opinion of his treating physician, Dr. James A. Chaney. [*Id.* at 4.]

**A**

Riddle first suggests that the ALJ's decision is not supported by substantial evidence. [R. 12-1 at 2-4.] After providing the Court with form-language on the substantial evidence standard, Riddle addressed the case in a very summary fashion. His entire argument is reprinted below:

> In the case at bar, the decision of the Administrative Law Judge is not supported by substantial evidence. A summary of the objective medical evidence in the record shows:
>
> (a) Riddle began having low back pain in late 90s due to an MVA. [Tr. 36, 419];
>
> (b) According to an MRI, Riddle had a moderate central bulge at L5-S1, with mild spinal stenosis. [Tr. 418].
>
> (c) Subsequently, Riddle's condition worsened and he also developed neck problems. [Tr. 233, 235, 274].
>
> (d) According to an MRI performed on August 8, 2010, Riddle had a disc herniation at L5-S1, and a protrusion at L4-L5, both with bilateral foraminal encroachment. [Tr. 272].
>
> (e) As a result of Riddle's worsening condition, he was referred to Mukut Sharma, M.D., an orthopedic surgeon, who noted on September 16, 2010, that Riddle walked with a limp on his left side, and walked in a stooped position. Sharma prescribed a cane for ambulation. [Tr. 274].

---

[2] "[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to ... put flesh on its bones." *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997). Riddle's arguments are not waived as they do have some semblance of flesh, although they are wholly lacking in muscle.

        (e) An SSA consultative examination confirmed that Riddle walked with a flexed
        gait and that his pain would be increased with repetitive bending, squatting,
        kneeling and lifting overhead, as well as weight bearing activity. [Tr. 265].

[R. 12-1 at 4.]  No additional argument is provided.

       Summarizing the "objective medical evidence" that supports Riddle's position, does little to explain to the Court why the ALJ's position is **not** supported by substantial evidence.  As already noted, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and **even if substantial evidence also supports the opposite conclusion**.  *See Ulman*, 693 F.3d at 714; *Bass*, 499 F.3d at 509; *Her*, 203 F.3d at 389-90.  Furthermore, as noted by the Government in its briefing, the ALJ, not Riddle, is tasked with weighing the evidence of record.  *See Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988) ("Although the record is replete with inconsistent medical reports and [the Claimant's] own conflicting testimony, we acknowledge the discretion vested in the ALJ to weigh all the evidence.") (citing *Myers v. Richardson,* 471 F.2d 1265 (6th Cir.1972); *Villarreal v. Secretary of Health and Human Services,* 818 F.2d 461 (6th Cir.1987)); *see also Richardson v. Perales*, 402 U.S. 389, 399 (1971)  ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict.")

       A review of the record shows that the ALJ did consider the "objective medical evidence" that Riddle refers to in his motion.  First, the ALJ noted that Riddle reported that he had been injured in a car accident in 1999.  [Tr. 15.]  Second, Riddle notes in his motion that he had a "moderate central bulge at L5-S1, with mild spinal stenosis," that he "developed neck problems," and that he "had a disc herniation at L5-S1, and a protrusion at L4-L5."  [R. 12-1 at 4.]  Apparently speaking to this evidence, ALJ Jackson found that Riddle suffered from following

severe impairments:  "Neck pain secondary to mild disc bulging, C3-4 and C$-5 and low back pain secondary to herniated nucleus pulposus, L5-S1 and disc protrusion, L4-5."  [Tr. 14.]  Third, Riddle noted that he "walked with a limp on his left side, and walked in a stooped position," which required the prescription of a cane.  [R. 12-4 at 4.]  ALJ Jackson did not restate Dr. Sharma's entire report, but did remark that Sharma "did not recommend any orthopedic surgical intervention, but did prescribe a cane to help him walk better."  [Tr. 16.]  Fourth, Riddle notes that the SSA consultative exam with Dr. Helen O'Donnell established that he "walked with a flexed gait and that his pain would be increased with repetitive bending, squatting, kneeling and lifting overhead, as well as weight bearing activity."  [R. 12-4 at 4 (citing Tr. 265.)]  ALJ Jackson uses nearly identical language discussing these findings in her decision:  "Repetitive bending, squatting, kneeling and lifting overhead would all likely increase pain of degenerative disc disease/degenerative joint disease.  Any weight bearing activity could be expected to increase symptoms of back and leg pain."  [Tr. 17.]  In addition to the evidence discussed above, the ALJ also considered evidence that was unfavorable to Riddle.  For example, the ALJ noted that Dr. Sharma had earlier advised Riddle to "quit smoking and use a lumbosacral corset."  [Tr. 16 (*citing* Tr. 275)].  Also, Dr. O'Donnell noted in her evaluation both that Riddle "seemed to try too hard to demonstrate disability" and that he was "narcotic dependent."  [Tr. 16-17 (*citing* Tr. 263-265.]

The ALJ also considered Riddle's testimony regarding his medical history, symptoms, limitations, and everyday routine.  The ALJ noted that Riddle has a 12th grade education and is able to read and write.  [Tr. 15.]  Riddle drives regularly and testified that "during a typical day, he washes dishes, sweeps with a broom, does laundry, and prepares food."  [*Id*.]  Riddle testified that he "can carry a bag of groceries or a gallon of milk" and can hold his 22-pound grandchild.

7

[*Id.*]  Riddle also testified that he entertains his grandson, plays with his dogs, and plays board games and on the computer.  [*Id.*]

On the basis of the aforementioned, and additional evidence detailed in her decision but not reprinted here, the ALJ concluded that Riddle has "the residual functional capacity to perform less than the Full Range of sedentary work as defined in 20 CFR 404.1567(a)."  [Tr. 15.] She noted the following limitations:

> He can lift/carry ten pounds occasionally, less than ten pounds frequently; stand and/or walk a total of two hours in an eight hour workday; sit about six hours in an eight hour workday; no more than occasionally pushing/pulling with the upper and lower extremities; never climbing ladders, ropes and scaffolds; occasionally climbing ramps or stairs; frequently balancing; occasionally stopping, kneeling, crouching or crawling; must avoid exposure to full-body vibration and hazards such as dangerous machinery or unprotected heights.

[Tr. 15.]  Riddle provides the Court with no argument as to why the ALJ's RFC is unsupported by substantial evidence.  After considering Riddle's age, education, work experience, RFC, and consulting with a vocational expert, the ALJ found that there are significant numbers of jobs in the national economy that Riddle can perform.  [Tr. 18.]

Riddle has not offered the Court any reason as to why this decision is not supported by substantial evidence.  Nevertheless, the ALJ was thorough, considering all the "objective medical evidence" to which Riddle cites in his brief in addition to the additional evidence addressed in this order.

## B

Riddle next suggests that Dr. Chaney's medical opinion was not properly considered.  [R. 12-1 at 4.]  As Riddle's treating physician, Chaney's opinion on the issues of the nature and severity of Riddle's impairments is given controlling weight only if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and is "not inconsistent with

other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541,

544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)).[3]  If the treating source's opinion is not

given controlling weight then the ALJ is required to consider the following factors in deciding

exactly how much weight is to be given to the opinion: length of the treatment relationship as

well as the frequency of examinations, the nature and extent of the treatment relationship, the

supportability of the medical opinion, the consistency of the opinion and the degree of

specialization of the treating source.  20 C.F.R. § 404.1527(c)(2)(i-ii), (c)(3-6); *Turner v.*

*Comm'r of Soc. Sec.*, 267 F. App'x 456, 460 (6th Cir. 2008); *Wilson,* 378 F.3d at 544.  The ALJ

is required to give "good reasons" for not giving weight to opinions from the treating physician

in a disability determination.  20 C.F.R. § 404.1527(c)(2).  The purpose of this requirement is to

"let claimants understand the disposition of their cases," to "ensure[] that the ALJ applies the

treating physician rule," and to "permit[] meaningful review of the ALJ's application of the rule."

*Wilson,* 378 F.3d at 544 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5; *Snell v. Apfel*, 177

F.3d 128, 134 (2d Cir. 1999); *Halloran v. Barnhart*, 362 F.3d 28, 32-33 (2d Cir. 2004)); *see also*

*Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 376 (6th Cir. 2013).

    As pointed out by the Commissioner, a physician's opinion about a claimant's capacity or

restrictions are relevant evidence, but those opinions are not authoritative because the ultimate

responsibility for assessing a claimant's RFC is that of the ALJ.  20 C.F.R. §§ 404.1512(b)(2),

404.1527(d)(2), 404.1545(a)(3), 404.1546(c); SSR 96-5p, 1996 WL 374183 (S.S.A.);  *Coldiron*

*v. Comm'r of Soc. Sec.*, 391 F. App'x 435, 439 (6th Cir. 2010;  *Poe v. Comm'r of Soc. Sec.*, 342

---

[3] This cited provision is now located at 20 C.F.R. § 404.1527(c)(2).

F. App'x 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's residual

functional capacity rests with the ALJ, not a physician.")

Again, Riddle provides the Court with a 'copy and paste' summary of the law on the

treating physician rule, and then offers the following summary argument:

> In the present case, the ALJ does not give significant weight to the RFC submitted by Dr.
> Chaney because "his treatment notes do no corroborate his assessment." [Tr. 16].
> However, Dr. Chaney's treatment notes consistently reflect that Riddle has multiple
> problems, including severe low back and neck impairments, which continued to worsen
> during his treatment. [Tr. 233, 272].

[R. 12-1 at 4.]  Chaney's notes do "consistently reflect that Riddle has multiple problems" with

his "low back and neck," but when one looks closely at Chaney's RFC assessment and treatment

notes, as the ALJ did, it becomes evident that the two are inconsistent.

The ALJ noted that Dr. Chaney completed a physical residual capacity questionnaire on

October 12, 2011.  [Tr. 16.]  Chaney gave Riddle a "fair" prognosis, finding that he was

incapable of performing even "low stress" jobs.  [Tr. 16.]  The ALJ summarized Chaney's

assessment as follows:

> Dr. Chaney opined the claimant could frequently lift less than ten pounds; occasionally
> ten pounds; walk one city block; sit 30 minutes at one time for a total of about two hours
> in an eight hour workday; and must use a case when engaging in standing/walking.

[Tr. 16.]  Finally, the ALJ noted that Chaney posited that Riddle's condition would result in

"good days" and "bad days" and that his condition would result in up to four work-absences per

month.  [*Id.*]  ALJ Jackson decided to "not accord significant weight to the RFC of Dr. Chaney,

as his treatment notes do not corroborate his assessment."  [*Id.*]

ALJ Jackson articulated these disconnects between Chaney's treatment notes and

assessment in her decision.  [*See* Tr. 16.]  They are also restated in the commissioner's brief.

[*See* R. 13 at 9.]  The Court will restate them here for completeness.  First, she notes that Dr.

10

Chaney's July 28, 2010 findings that "a MRI of the cervical spine revealed bulging of the disc and osteophyte formation at C5-6 and C6-7 with neural foraminal encroachment related to lateral bulging of the disc and hypertrophic facet joint change at these levels and minimal diffuse bulging of the disc at C3-4 and C4-5" [Tr. 16, 270-71] are inconsistent with Chaney's "impression" that Riddle had "no disc herniation or focal cervical spinal cord signal abnormality." [Tr. 16, 271]. The ALJ further noted that "[a]t the lumbar spine, there was a minimal degree of diffuse bulging of the disc at Ll-2 and L2-3 and moderate degree of diffuse bulging of the disc as well as localized central disc protrusion with mild bilateral neural foraminal encroachment at L4-5." [Tr. 16 (citing Tr. 233-261; 268-274; 283-375.] Second, the ALJ noted that Dr. Chaney referred Riddle to Dr. Sharma for "low back and bilateral hip pain." [Tr. 16; 274; 282.] The ALJ noted that Sharma did not recommend surgical intervention, but did recommend Riddle use a cane. [*Id*.]

The ALJ provided a sound explanation for discounting Chaney's RFC assessment. Importantly, the ultimate determination regarding RFC is reserved for the ALJ. 20 C.F.R. §404.1545(e); *Saylor v. Astrue*, 2009 WL 310911, at *2 (E.D. Ky. Feb. 9, 2009); *White v. Comm'r of Soc. Sec. Admin.*, 2013 WL 4817673, at *751 (N.D. Ohio Sept. 10, 2013); 20 C.F.R. § 404.1527(d)(2) ("Although we consider opinions from medical sources on issues such as … your residual functional capacity …the final responsibility for deciding these issues is reserved to the Commissioner.") Accordingly, ALJ Jackson's opinion will not be disturbed.

### III

Thus, after reviewing the record, the Court finds that the ALJ's decision finding Riddle not disabled is supported by substantial evidence. Moreover, even if the evidence could also support another conclusion, the ALJ's decision must stand because the evidence reasonably

11

supports her conclusion. *See Her*, 203 F.3d at 389-90; *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993).

**ACCORDINGLY**, and the Court being sufficiently advised, it is hereby ordered as follows:

(1) Riddle's motion for Summary Judgment [R. 12] is **DENIED**;

(2) The Commissioner's Motion for Summary Judgment [R. 13] is **GRANTED**; and,

(3) **JUDGMENT** in favor of the defendant will be entered contemporaneously herewith.

This 6th day of February, 2015

Signed By:

*Gregory F. Van Tatenhove*

**United States District Judge**